Long Island College Hospital, Respondent, v David Axelrod, as Commissioner of Health of the State of New York, et al., Appellants.

Third Department, July 3, 1986

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for appellants.

*Proskauer, Rose, Goetz & Mendelsohn (Larry M. Lavinsky* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Defendant Commissioner of Health, pursuant to Public Health Law § 2807 (3), establishes reimbursement rates for Medicaid. The calculation of these rates is based on an analysis of actual costs during a given base period and projections of changes in these costs during a subsequent period. A hospital's allowable base year operating costs are multiplied by a "trend factor".* The purpose of the trend factor is to account for allowable cost increases between the base year and the rate year. The trend factor includes a component for projected labor costs increases and is based, *inter alia,* on national employment cost indices published on a quarterly basis by the United States Department of Labor. Reimbursement rates, however, may be based upon a facility's actual projected labor cost increase instead of national indices if the facility can demonstrate that it cannot afford the increased labor costs resulting from a labor agreement. This rate adjustment is known as the supplement hospital index factor (SHIF) and is granted pursuant to 10 NYCRR 86-1.17 (a) (5). SHIF is a waiver of the trend factor and involves replacing the average labor cost component of the trend factor with a component reflecting a facility's projected labor cost increases. The criteria for granting SHIF include a demonstration by the facility that it cannot afford, either in whole or in part, increases in employee compensation or benefits resulting from a labor agreement.

In July 1980, the League of Voluntary Homes and Hospitals of New York (League), a collective bargaining association of a majority of the unionized hospitals in New York City, negotiated a two-year contract with District 1199, National Union of Hospital and Health Care Employees (District 1199), the principal union for New York City health care workers. Shortly thereafter, the Department of Health entered into a memorandum of agreement (Agreement) with the League. Pursuant to the Agreement, the Department agreed to accept as reasonable the labor cost increases in the League's new contract with District 1199 and agreed to make additional reimbursement available to League hospitals to cover wage increases by

---

* Public Health Law § 2807 (2) (j) (i) was in effect for the period July 24, 1978 to December 31, 1982. It has been superseded by Public Health Law § 2807-a (8) (L 1982, ch 536, § 10). Public Health Law § 2807-a (8) requires the establishment of the same trend factor required by Public Health Law former § 2807 (2) (j) (i), and applies that trend factor to determine an annual revenue cap for each hospital (*see,* Public Health Law § 2807-a [1]).

employing SHIF. While League hospitals were thus presumed eligible for SHIF, non-League hospitals had to demonstrate a need therefor. Further, the Agreement provided that SHIF would be calculated for League hospitals by increasing employee compensation by a 45% roll-up. No similar provision was set for the SHIF calculation for non-League hospitals.

On October 8, 1980, plaintiff, a not-for-profit voluntary hospital located in Brooklyn, entered into a collective bargaining agreement, retroactive to July 1, 1980, with District 1199. The contract provided for increases in wages and benefits for plaintiff's employees which would bring them up to the levels reflected in the July 1980 master contract between the League and District 1199. Plaintiff joined the League in November 1980 and requested the Department to apply SHIF to its reimbursement calculation to cover plaintiff's parity costs and wage increases. The Department found that plaintiff was eligible for SHIF but failed to apply the 45% roll-up to plaintiff's reimbursement calculation since plaintiff had chosen to increase its employee compensation at a rate greater than industry norms. Accordingly, the Department ruled that any increase in such norms had to be phased in over a three-year period.

Plaintiff requested an administrative hearing pursuant to 10 NYCRR 86-1.17 (c) (1). The request was denied by the Department's rate review officer on the ground that there were no issues of fact. On September 13, 1984, plaintiff commenced this declaratory judgment action against, among others, the Commissioner, seeking declarations that the Department's failure to utilize the two-year phase-in of parity costs and to apply the 45% roll-up to plaintiff's reimbursement rate calculation violated its rights under State and Federal law. On February 1, 1985, defendants moved for an order converting this action into a CPLR article 78 proceeding and granting judgment dismissing the petition or, in the alternative, for summary judgment in favor of defendants. Special Term denied defendants' motion in its entirety. This appeal by defendants ensued.

■■ Defendants contend that the disputed reimbursement rate was just and reasonable and argue that plaintiff failed to prove that the rate determination was arbitrary and capricious and, accordingly, that summary judgment dismissing the complaint should have been granted. We disagree.

■ A party is entitled to summary relief only if the court

determines that, based upon the proof presented, no genuine issue of fact exists to establish the defendant's liability to the plaintiff *(Andre v Pomeroy,* 35 NY2d 361, 364). Next, if, on the record before the court, it cannot be determined that there are no issues of material fact, the motion must be denied *(see, Udoff v Zipf,* 44 NY2d 117, 122). Here, there are disputed issues of material fact arising from plaintiff's parity claim. The parties disagree about plaintiff's actual phase-in schedule. Plaintiff seriously challenges the Department's decision to utilize an artificial three-year phase-in of the parity increase in the reimbursement rate calculation. Plaintiff insists that it phased in most of its parity costs over two years and defendants assert that plaintiff's phase-in time of such costs exceeded industry norms. However, defendants have failed to present any evidence of the "industry norms" by which they evaluated plaintiff's phase-in of such costs. Further, contrary to defendants' assertion, the record does not demonstrate that plaintiff acceded to the application of an artificial three-year phase-in period. Accordingly, when, as here, it is not possible for the court to determine whether the reimbursement rate was reasonably related to the plaintiff's cost of efficient production of services, as required by Public Health Law § 2807 (3), denial of summary judgment as to the phase-in of parity costs is proper.

■ Next, with respect to plaintiff's SHIF claim, which is based on its constitutional challenge that the Agreement improperly treated similarly situated hospitals differently by allowing a 45% roll-up in the SHIF calculation for League hospitals but made no similar allowance for non-League hospitals, we conclude that the present record is inadequate in factual detail so as to permit judicial review to determine if defendants' denial of the 45% roll-up constitutes unlawful discrimination and violates Federal and State law governing hospital reimbursement. While it is normally incumbent on the party opposing summary judgment to come forward with evidence in opposition, the rule does not apply to a party who has been unable to obtain the necessary evidence because, as here, such proof is peculiarly within the moving party's knowledge *(see,* CPLR 3212; *Udoff v Zipf, supra; Piccolo v De Carlo,* 90 AD2d 609, 610). Thus, Special Term properly denied *defendants'* motion for summary judgment as it pertained to the constitutional challenge because it was premature since plaintiff has not yet had an opportunity to conduct pretrial discovery.

■ Turning to that part of the order appealed from which denied defendants' motion to convert this action to a CPLR article 78 proceeding, we conclude that Special Term erred in failing to convert that part of the declaratory judgment action which challenged defendants' rate-setting process. Plaintiff's challenge is twofold. First, plaintiff maintains that defendants erroneously found that plaintiff's two-year phase-in of parity increase exceeded industry norms and, therefore, the determination to set reimbursement rates based on an artificial three-year phase-in was arbitrary and capricious. Defendants' decision not to utilize plaintiff's two-year phase-in of parity costs in the reimbursement rate calculation was an administrative, not a legislative, action. As such, the proper avenue of review was by an article 78 proceeding, not a declaratory judgment action *(see, International Paper Co. v Sterling Forest Pollution Control Corp., 105 AD2d 278, 282-283).*

■ Special Term was correct, however, in determining that plaintiff's constitutional challenge to the Agreement was properly brought as a declaratory judgment action. The Agreement was a legislative, not an administrative, act. Plaintiff is not arguing that the Agreement was unconstitutionally applied. Rather, plaintiff contends that the agreement itself is unconstitutional in that it impermissibly treats similarly situated hospitals differently. Therefore, since the issue raised by plaintiff requires the court to pass upon the constitutionality of the policy set forth in the Agreement, as opposed to the action taken under the Agreement, the challenge was properly brought as a declaratory judgment action *(see, 92-07 Rest. v New York State Liq. Auth., 80 AD2d 603, 604; see also, Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 191).*

■ Finally, we conclude that despite our holding that triable issues of fact exist which preclude summary relief as demanded by defendants, the matter need not be remitted to the Department for a hearing. The relevant regulation, 10 NYCRR 86-1.17 (c) (2), provides that if the rate review officer determines that no factual issues exist regarding a facility's challenge to its reimbursement rate, then the request for a hearing will be denied. Since the rate review officer so held herein, the administrative appeal process ended. Plaintiff had exhausted its administrative remedies and was entitled to seek judicial relief. Further, if the matter were remitted, the hearing officer could not pass upon the constitutionality of the

Department's policy which allegedly treated similarly situated facilities differently regarding the SHIF calculation. Thus, a Departmental hearing would only afford partial relief since it could only review the determination regarding the phase-in of parity increases. Finally, since six years have passed since this matter was initiated, prudence dictates that this matter be remitted to Special Term for a final determination, rather than remitting part to Special Term and part to the Department for piecemeal determination regarding plaintiff's 1980 and 1981 reimbursement rates.

MAIN, MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for conversion to a CPLR article 78 proceeding of that part of the action which challenges defendants' application of a three-year phase-in of parity increases to plaintiff's reimbursement rate; motion granted to that extent and matter remitted to Special Term for a final determination; and as so modified, affirmed.